# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| KRISTOPHER A. SCHWARTZ, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ART COOK, et al.,<br><br>　　　　　　　Defendants,<br><br>　　　　　　　and<br><br>BUCKLES-SMITH ELECTRIC COMPANY EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>　　　　　　　Nominal Defendant. | Case No. 15-cv-03347-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND GRANTING PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>[Re: ECF 129, 130] |

On June 15, 2017, the Court heard Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Award of Attorneys' Fees and Costs. *See* Minute Entry, ECF 137. The Court granted both motions on the record and issued a short order memorializing its rulings so that Plaintiff could begin administrative tasks necessary to distribution of the settlement fund. *See* Order Granting Plaintiff's Motion for Final Approval, ECF 136. The Court indicated that it would issue a lengthier order setting forth its reasoning, which it does below.

## I.　BACKGROUND

Plaintiff Kristopher A. Schwartz and class members were participants in or beneficiaries of the Buckles-Smith Electric Company Employee Stock Ownership Plan ("the ESOP" or "the Plan"), an employee pension benefit plan covered by the Employee Retirement Income Security

Act of 1974 ("ERISA"). Plaintiff claims that Defendants – Buckles-Smith Electric Company ("Buckles-Smith" or "the Company"), several of its Board members, and Bankers Trust Company of South Dakota – breached fiduciary duties owed to the Plan and its participants. *See* Second Amended Complaint ("SAC"), ECF 118. Specifically, Plaintiff asserts that Defendants terminated the ESOP in 2014 and forced a buyout at "far less than the fair market value of the ESOP's shares, far less than the amount the ESOP was entitled to under the operative bylaws of Buckles-Smith, and far less than the liquidation value of Buckles-Smith's assets – which represented the price at which the Company's departing shareholders had been redeemed for decades pursuant to shareholder agreements." SAC ¶ 1. Plaintiff also alleges that "Defendants ignored in-hand, bona fide written offers to purchase either all of the shares of Buckles-Smith or just those shares owned by the ESOP for nearly double the price actually paid." *Id.* Plaintiff claims that "[b]y this abuse of their position of trust and authority with respect to the ESOP, Defendants enriched themselves at the expense of the ESOP and its participants." *Id.*

After more than a year of litigation, the parties settled the case with the aid of a mediator, the Hon. Edward A. Infante. The written Settlement Agreement contemplates the certification of a non-opt out class pursuant to Federal Rule of Civil Procedure 23, defined as: "All Persons who were participants (whether vested or non-vested) in or beneficiaries of the Plan at any time from and after September 1, 2012 (the "Class Period"), provided, however, that the Class shall not include any Defendant or any beneficiary of any Defendant." Settlement Agreement ¶¶ 1.3, 3.3.2, ECF 116-1 (emphasis omitted). The Settlement Agreement provides that the Company will pay the total amount of $350,000 ("Settlement Payment") to settle all claims asserted against all defendants in the action. *Id.* ¶¶ 1.20, 8.1.1. The $350,000 Settlement Payment will be used to establish a Settlement Fund which will be maintained and distributed by Class Counsel. *Id.* ¶ 1.19. The cost of preparing and mailing the class notice will be paid from the Settlement Fund, and class counsel may apply to the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund. *Id.* ¶¶ 8.1.2, 8.2.

On March 20, 2017, the Court issued an order which: granted preliminary approval of the class action settlement; preliminarily certified the class; appointed Plaintiff as class representative;

1  appointed Plaintiff's counsel as class counsel; approved forms and methods of notice to the class;
2  set a deadline of May 15, 2017 for objections; and set a hearing date of June 15, 2017 for
3  Plaintiff's motion for final approval of the class action settlement and for Plaintiff's motion for
4  attorneys' fees. *See* Order Preliminarily Approving Settlement, ECF 125. The only objection
5  received in response to the class notice was a letter dated May 10, 2017 from Robert J. Polito. *See*
6  Polito Objection, ECF 133. Mr. Polito does not object to the settlement *per se*, but he suggests a
7  modification to the Settlement Agreement as discussed below. *Id.* Mr. Polito does not object to
8  Plaintiff's motion for attorneys' fees and costs. *Id.*

9  On June 15, 2017, the Court heard Plaintiff's motion for final approval and motion for
10 attorneys' fees and costs. Mr. Polito appeared at the hearing and presented argument to the Court.
11 The Court thereafter granted both the motion for final approval of class action settlement and the
12 motion for attorneys' fees on the record, and it advised the parties that a short order memorializing
13 the ruling would issue immediately while a more lengthy order setting forth the Court's reasoning
14 would issue at a later date.

**II.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

   **A.    Legal Standard**

Federal Rule of Civil Procedure 23(3) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). The district court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Id.* at 818-19. "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by several factors articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

United States District Court
Northern District of California

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### B. Notice was Adequate

The Court previously approved Plaintiff's plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* Order Preliminarily Approving Settlement, ECF 125. Prior to the preliminary approval hearing, the Court examined carefully the proposed class notice and found some aspects of the proposed notice to be unclear. The Court required Plaintiff to make certain changes to the notice to clarify the procedures for objecting to the settlement and attending the final approval hearing. Plaintiff submitted a revised proposed class notice along with a blackline version showing that the required revisions had been made. *See* Notice Re: Revised Form of Notice of Proposed Settlement, ECF 128. Plaintiff provides declaration of counsel stating that the notice was delivered to all class members by United States mail on March 27, 2017 at their last known addresses provided by the Company. Gotto Decl. ¶ 6, ECF 130-1. The Court is satisfied that the class members were provided with adequate notice.

### C. The Settlement is Fundamentally Fair, Adequate, and Reasonable

After evaluating the settlement as a whole, as guided by the *Hanlon* factors, the Court concludes that the settlement is fundamentally fair, adequate and reasonable. Importantly, there is no indication of collusion because the settlement is a result of post-discovery, arms-length negotiations between experienced counsel with the aid of a respected mediator. "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex*

1  *Litigation* (Third) § 30.42 (1995)).

2  The parties have engaged in discovery and motion practice during the year that the case
3  has been pending. The Court granted a first motion to dismiss with leave to amend, and had heard
4  a second motion to dismiss which was pending when the parties reached settlement. Given that
5  the case was still at the pleading stage, it is likely that litigation would have continued for a
6  significant period of time absent settlement. Such litigation would have resulted in substantial
7  expenditure of resources by both sides, particularly if the case reached the class certification stage.
8  Moreover, Plaintiff would have risked dismissal of some or all of his claims and the possibility
9  that the putative class would not be certified.

10  The number of Company shares at issue in the lawsuit is approximately 58,000; at the
11  hearing, Plaintiff's counsel represented that the exact number is 58,187 shares. Thus the $350,000
12  settlement represents approximately $6.00 per share before attorneys' fees and expenses are
13  deducted, and approximately $3.61 per share after deduction. Given the likely duration of the
14  litigation and the risks discussed above, the Court concludes that this recovery is fair and
15  adequate. The Court's favorable view appears to be shared by class members, as the Court
16  received only one objection to the settlement, which is discussed below.

### D. Mr. Polito's Objection

Mr. Polito submitted a written objection and presented argument at the final approval hearing. Mr. Polito identifies himself as the "Original Plan Sponsor & Trustee," and states in his letter that he established the Plan in 1996 so that employees could share in the Company's success. Polito Objection, ECF 133. Plaintiff's SAC alleges that Mr. Polito became the President and Chief Executive Officer of the Company in 1983 and describes a falling-out with other executives that led to him leaving the Company. SAC ¶¶ 25-28. Based on this record, it appears that Mr. Polito is knowledgeable about the company and the Plan.

At the hearing, Mr. Polito stated that he was not opposed to the settlement in concept. However, he believes that the Company is far more valuable than has been represented by the parties. He requests that the settlement agreement be revised to "include a 'Lookback' provision so that the employees receive some restitution when and if the Company is sold" at a higher price

United States District Court
Northern District of California

than the Company's present valuation. Polito Objection, ECF 133. At the hearing, Mr. Polito suggested that the proposed Lookback provision should be in effect for at least ten years.

It is apparent that Mr. Polito cares deeply about the Company's employees and that he wishes them to get the best deal possible in this litigation. However, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819. Mr. Polito's proposal is based on speculation that at some point in the future the Company might be sold for more than its present valuation. Even if that were to occur, it would be impossible to determine whether the Company's value at the time of sale reflected pre-litigation events versus post-litigation management of the Company. Moreover, if the Court were to modify the Settlement Agreement to add a Lookback provision, the entire settlement might well be derailed. The Settlement Agreement provides that it will become null and void upon modification by the Court unless the parties agree to the modification in writing within thirty-one days. Settlement Agreement ¶ 8.3.2, ECF 116-1. The parties have not indicated a willingness to agree to the proposed Lookback provision.

Accordingly, Mr. Polito's objection to final approval of the settlement is OVERRULED.

### E. Conclusion

Based on the foregoing reasons, and after considering the record as a whole (including Mr. Polito's objection) as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate and reasonable.

Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES AND COSTS

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th

Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the

1  percentage method, "the lodestar may provide a useful perspective on the reasonableness of a
2  given percentage award." *Id.* "The lodestar cross-check calculation need entail neither
3  mathematical precision nor bean counting. . . . [courts] may rely on summaries submitted by the
4  attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-
5  00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and
6  citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### B.   Discussion

Plaintiff seeks an award of attorneys' fees totaling $115,500, which represents 33% of the Settlement Fund, as well as $25,000 in expenses incurred in prosecuting this litigation.

Addressing expenses first, the Court has no hesitation in approving an award in the requested amount of $25,000. Class counsel has submitted a declaration stating that counsel incurred $27,077.98 in actual expenses, and that all of those expenses reasonably were necessary to prosecution of this litigation. *See* Gotto Decl. ¶ 15, ECF 129-3. The itemized list of expenses provided by counsel supports a conclusion that the expenses were reasonably necessary. *See* Gotto Decl. Exh. B. The requested amount of $25,000 is consistent with the notice sent to the class, which stated that Class Counsel would seek "reimbursement of expenses (not to exceed $25,000), which amounts if awarded will be paid from the Settlement Fund." Final Class Notice ¶ 5, ECF 128-2.

The Court likewise concludes that an award of attorneys' fees in the requested amount of $115,500 is quite reasonable. Using the percentage-of-recovery method, the amount requested represents 33% of the Settlement Fund, which is at the high end of the range normally awarded by courts within the Ninth Circuit. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage."). However, all of the relevant factors support the award: counsel obtained a good

result for the class, there was a significant risk for Plaintiff in proceeding with the litigation, counsel's work on the case was of a high quality, and counsel has litigated this case completely contingent on outcome – the firm has not been paid for any of its time or expenses incurred to date. *See* Gotto Decl. ¶ 5. Counsel's intent to seek fees in the amount of 33% of the $350,000 Settlement Fund was disclosed in the notice sent to the class, and the Court has not received any objections to the proposed award. Final Class Notice ¶ 5, ECF 128-2.

Finally, a lodestar cross-check confirms the reasonableness of the requested fee award. The total lodestar for class counsel from the inception of the case to the date the Court granted preliminary approval of the class action settlement is $514,626.90. Gotto Decl. ¶ 12 & Exh. A, ECF 129-2. That amount does not include time devoted to the case for preparing the motion for final approval, the motion for attorneys' fees, or any other work performed after preliminary approval was granted. Based on this record, Plaintiff's request for attorneys' fees in the amount of $115,500 appears to be not only reasonable, but modest.

Accordingly, Plaintiff's motion for attorneys' fees and costs is GRANTED.

## IV.   ORDER

For the foregoing reasons,

(1)   Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED;

(2)   Plaintiff's Motion for Award of Attorneys' Fees and Costs is GRANTED; and

(3)   The Clerk shall close the file pursuant to this order and the Order and Final Judgment issued simultaneously.

Dated:  June 30, 2017

_____
BETH LABSON FREEMAN
United States District Judge